JOHN WILSON v. DULUTH STREET RAILWAY COMPANY.[1]

May 11, 1896.

Nos. 9787—(16).

**Street Railway—Stations.**
"Stations at each end of the lines," in section 15 of defendant's charter (Sp. Laws 1881, Ex. Sess., c. 200), construed as meaning stations at each end of the tracks, and not at each end of the run of particular cars.

Action in the municipal court of Duluth. The complaint alleged that, while plaintiff was driving across the track of defendant, his carriage was negligently run into by one of defendant's cars, and that said car could not be seen by plaintiff for the reason that other cars were by defendant negligently, and contrary to Sp. Laws 1881, Ex. Sess., c. 200, § 15, left standing on the track in front of an intersecting street on which plaintiff was driving, 'so that the moving car could not be seen by plaintiff as he approached. From an order, Edson, J., denying a motion for a new trial, after a verdict in favor of plaintiff for $201.95, defendant appealed. Affirmed.

*Thomas S. Wood*, for appellant.
*Allen & Baldwin*, for respondent.

MITCHELL, J. Defendant's charter[2] granted it the right to construct and operate a single or double track for a passenger railway, with all necessary tracks for turnouts, side tracks, and switches, in any of the streets of the village of Duluth and its suburbs, including New London and Oneota, and in the roads connecting the same. Section 15 of the act provides that its cars

[1] Reported in 67 N. W. 82.  [2] Sp. Laws 1881, Ex. Sess., c. 200.

shall be run in conformity with the following, among other, rules and regulations: "(4) No car shall be left to remain standing on any street at any time unless the same is waiting for passengers or is unavoidably detained. (5) No car shall be allowed to stop on a cross walk or in front of any intersecting street except to avoid collision or to prevent danger to persons in the street or to take in or leave off passengers." "(10) No cars shall remain standing on any of the stations more than ten minutes except at each end of the lines and the stations nearest the passenger depots of any other railway companies, at which excepted stations they may stay a longer time." The court instructed the jury that "the end of the lines," as used in this tenth and last rule, "referred to the defendant's system as a system," and that the "termination of the line" meant simply the "termination of the system." The correctness of this definition of the expression "the end of the lines" is the only question presented by the record and the assignments of error.

The defendant contends that a station at "the end of a line" means the station at the end of the run of any particular cars, while plaintiff contends that it means the station at the end of a particular track. While it is not entirely clear what the court meant by the word "system," yet it seems to be conceded or assumed by both parties that the instruction was in substantial conformity with plaintiff's present contention as to the meaning of the term "end of the line."

A reference to the facts will illustrate the meaning of the parties: Defendant had two parallel tracks on Superior street, which were several miles long. It had a track on Fourth street which connected with the Superior street tracks at Third avenue west, three blocks distant from the point on the Superior street tracks at which the car in question was left standing more than 10 minutes. This car was one of those called "14th Ave. East Cars." One of the terminal points of the run of these cars was on the Superior street tracks between Fifth and Sixth avenues (the place at which the car in question was left standing), at which point, on their arrival, they were turned round, and then run back on one of the Superior street tracks to its connection with the Fourth street track, over which it ran to the other terminus of its run. The point, however, on the Superior street track which constituted

one terminus of the run of these Fourteenth avenue cars was not the end of the Superior street track. Defendant's contention, applied to the particular facts of the case, is that this point, being the end of the run of these particular cars, was a station at the end of the line, within the meaning of the statute, although not at the end of the track.

Inasmuch as street railways usually have no "station," properly so called, but receive and discharge passengers at any point along the route of the cars, it is not entirely clear what the legislature meant by that term, especially as there is no other part of the act that tends to throw any particular light on the question. Neither is there anything in the act clearly and positively indicating what the legislature meant by the word "line." The act, as has been seen, authorizes the defendant to construct a single or double track on every street in the village (now city), thus enabling it to cover the streets with a network of tracks. There is nothing in the act to prevent the defendant from making the end of the "run" of any particular cars at any point on any street it sees fit. Conceding that cars must be run on schedule time, and that for the purpose of receiving passengers, and waiting for the arrival of the schedule time for its departure, it would be necessary for a car to be left standing longer at the terminus of its run than would be required at any intermediate point on its route, yet it is a matter of common knowledge that, under any ordinary circumstances, 10 minutes would be ample time for such purposes, even at the terminus of its run. We attach much importance to the length of time thus allowed, as tending to indicate what exceptions the legislature intended to make to the general rule. The end of a track will usually be out in the suburbs, where no great public inconvenience will result from allowing cars to stand in the street, and where circumstances might often require that they be allowed to stand longer than at other places. It might often be necessary for a car to stand longer than 10 minutes at or near a railway station, while waiting for passengers to arrive on incoming trains. These, we think, were the cases which the legislature must have intended to except from the general rule.

Our conclusion, therefore, is that plaintiff's contention is correct, and that "stations at the end of the lines," in this statute, means stations at the end of the tracks. This being so, the in-

struction of the court, even if not verbally accurate, was, under the evidence, without prejudice.

Order affirmed.